[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13195
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cr-00132-JDW-MAP-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RIGOBERTO AVILA-SANTOYO,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 16, 2012)

Before PRYOR, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Rigoberto Avila-Santoyo appeals the denial of his motion to withdraw his pleas of guilty for reentering following his removal from the United States, 8 U.S.C. § 1326(a), and entering the United States illegally, id. § 1325(a)(1). Avila-Santoyo argues that his guilty pleas were unknowing and involuntary because his attorney failed to advise him to challenge collaterally an order of removal that Avila-Santoyo requested. Although we affirm the denial of Avila-Santoyo's motion to withdraw his plea of guilty, we raise sua sponte an issue about a clerical error in the report and recommendation of the magistrate judge and the order of the district court adopting that recommendation, and we remand with instructions to correct the error in those two orders.

## I. BACKGROUND

In 1993, two-year-old Avila-Santoyo, a native and citizen of Mexico, entered the United States illegally. In March 2009, authorities arrested Avila-Santoyo in Florida. Avila-Santoyo stipulated to his removal, and an immigration judge ordered Avila-Santoyo removed to Mexico.

In January 2011, officers apprehended Avila-Santoyo in Tampa, Florida, and later Avila-Santoyo was charged with two crimes related to his illegal entry. Defense counsel instructed Avila-Santoyo to seek advice from an immigration attorney about his earlier removal from the United States, and Avila-Santoyo's

2

family reported to defense counsel that "nothing could be done."  Based on that information, defense counsel advised Avila-Santoyo to plead guilty.

During a change of plea hearing before a magistrate judge, Avila-Santoyo stated that he had consulted with counsel and that he understood the elements of the two crimes in his indictment and his punishment, which included deportation after serving his sentence.  Avila-Santoyo admitted that he had reentered the United States after having been deported and that he had entered the country "[a]t the border."  The magistrate judge found that Avila-Santoyo was knowingly and voluntarily pleading guilty and that there was a factual basis for both guilty pleas.

The magistrate judge entered a report recommending that the district court accept Avila-Santoyo's plea of guilty "to Count ONE (1) of the indictment," which charged Avila-Santoyo with being found in the United States following his deportation, 8 U.S.C. § 1326(a).  The district court accepted Avila-Santoyo's "plea of guilty . . . to Count(s) One of the Indictment," and scheduled the matter for a sentencing hearing.

Five days before his sentencing hearing, Avila-Santoyo moved to withdraw his pleas of guilty.  Avila-Santoyo alleged that, after defense counsel contacted The Heartland Alliance National Justice Center and reviewed the decision in United States v. Ramos, 623 F.3d 672 (9th Cir. 2010), counsel "developed a good

3

faith reason to believe" that Avila-Santoyo had been denied due process during his removal proceeding.  Avila-Santoyo alleged that he had been prejudiced by the purported denial of due process because he "arguably qualified" for a cancellation of removal as an alien who had resided in the United States continuously for more than ten years and whose removal would result in a hardship to his resident child.  See 8 U.S.C. § 1229b(b)(1).  Avila-Santoyo "suggest[ed] that 'close assistance of counsel was available,'" but that counsel was ineffective.  Avila-Santoyo alleged that counsel had "limited knowledge" of immigration law; advised Avila-Santoyo's family to meet with an immigration attorney; and relied on the representations of Avila-Santoyo's family that "they were advised nothing could be done."  Avila-Santoyo also alleged that, had "counsel known about the . . . Center and had the ability to consult with them" before entry of the guilty plea, "counsel would have advised Mr. Avila-Santoyo of his legal option to challenge the indictment by way of a Motion to Dismiss."

The district court held a sentencing hearing during which it heard evidence and argument about Avila-Santoyo's motion to withdraw.  During the hearing, Avila-Santoyo testified that he wanted to withdraw his guilty plea so that he could "get a waiver and stay in the United States" and "be a father to [his] daughter."  On cross-examination, Avila-Santoyo testified that he had stipulated to being

4

removed from the United States after conferring with an agency in Chicago, Illinois, and disclosing to the agency that he was being deported, among other reasons, because of his membership in a street gang. Avila-Santoyo also testified that he had received copies of the stipulation form in both English and Spanish; he had been required to read the form and had been read the form in Spanish; he had understood that he had waived his rights to a hearing before an immigration judge, to counsel, and to present evidence; and he had understood that he would be deported immediately.

The district court denied orally Avila-Santoyo's motion to withdraw his plea and mentioned that, even if Avila-Santoyo was "successful in challenging the Count One deportation order, he [would] still be stuck with the facts underlying Count Two . . . which are not challenged." The district court then "turn[ed] to the sentencing" and, after identifying Avila-Santoyo's two crimes, the court stated that it had accepted and "adjudicated [Avila-Santoyo] guilty of those offenses." The district court sentenced Avila-Santoyo to "three years of probation."

The district court later entered a written order denying Avila-Santoyo's motion and explaining that Avila-Santoyo had failed to prove, under the four factors identified in United States v. Buckles, 843 F.2d 469, 472 (11th Cir. 1988), that a "fair and just reason" existed to withdraw his guilty plea. As to the first

5

factor, the district court found that Avila-Santoyo "received close assistance of counsel in determining whether to plead guilty" because the record established that "there was nothing deficient in counsel's performance which undermined the knowing and voluntary nature of [his] guilty plea"; counsel's "recommendation that [Avila-Santoyo] confer with an immigration attorney [was] commendable"; and "[t]here was certainly nothing per se deficient about defense counsel relying on the information provided by [Avila-Santoyo]'s family."  With respect to the second factor, the district court found that Avila-Santoyo's guilty plea was knowing and voluntary as established by Avila-Santoyo's "conce[ssion] that there [were] no deficiencies in his change of plea colloquy"; his failure to make a "claim [about] coercion or a lack of understanding as to his guilty plea" or "contend that he was misadvised by the judge or his attorney on any matters material to his guilty plea"; and the existence of a "factual basis for his plea, as evidenced by his immigration file and the stipulated removal order."  With regard to the third factor, the district court found that "the impact on judicial resources would not be terribly significant, [but] the withdrawal of the plea would necessarily result in a prolonged hearing on the proposed motion to dismiss, and if unsuccessful, a trial on the merits."  As to the fourth and final factor, the district court found that "[t]he Government would be prejudiced in having to defend an immigration proceeding

6

more than two years old, transcripts of which likely do not exist." The district court ruled that Avila-Santoyo failed to "identify any specific ground for a collateral attack on his underlying deportation order, much less anything fundamentally unfair about that process," and his "hopes to launch a successful collateral attack on [his] deportation order and remain in this country," did not create "a 'fair and just reason' for permitting [him] to withdraw his guilty plea."

In the meantime, Avila-Santoyo moved to reopen his removal proceeding. The Board of Immigration Appeals determined that Avila-Santoyo's motion was untimely and that the immigration judge lacked jurisdiction to reopen the removal proceeding, 8 C.F.R. § 1003.23(b)(1). See Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001) (judicial notice). The Board also declined sua sponte to reopen the proceeding. Id. 1003.2(a). Avila-Santoyo's petition for review is pending before this Court.

## II. STANDARDS OF REVIEW

We review the denial of a motion to withdraw a guilty plea for abuse of discretion, and "[w]e will reverse [that] decision . . . only if it is arbitrary or unreasonable." United States v. Najjar, 283 F.3d 1306, 1307 (11th Cir. 2002). "We may sua sponte raise the issue of clerical errors in the judgment and remand with instructions that the district court correct the errors." United States v.

Massey, 443 F.3d 814, 822 (11th Cir. 2006) (citing United States v. Anderton, 136 F.3d 747, 751 (11th Cir. 1998)).

### III. DISCUSSION

We address two issues in this appeal.  First, we address Avila-Santoyo's argument that he was entitled to withdraw his plea of guilt because, but for the ineffectiveness of trial counsel, he could have challenged collaterally an underlying order of deportation.  Second, we address a clerical error that we noticed in the record.

The district court did not abuse its discretion when it denied Avila-Santoyo's motion to withdraw his guilty plea.  Avila-Santoyo's arguments and evidence fell well short of establishing "a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  Avila-Santoyo failed to identify any deficiency that would have rendered his pleas unknowing or involuntary — other than the failure of counsel to advise him to challenge his order of removal.  Avila-Santoyo conceded that he received close assistance of counsel, and the district court was entitled to find that counsel reasonably relied on the representations of Avila-Santoyo that he had received legal advice that a collateral challenge to his order of removal would be futile.  See Strickland v. Washington, 466 U.S. 668, 691, 104 S. Ct. 2052, 2066 (1984) ("[W]hen a defendant has given counsel reason

8

to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."); see also United States v. Pease, 240 F.3d 938, 941–42 (11th Cir. 2001) ("[W]e cannot say as a matter of law that reliance on a client's statements is per se deficient performance."). Although counsel conceded that his performance was deficient, the district court was not required to give that concession any weight. See Wright v. Hopper, 169 F.3d 695, 707 (11th Cir. 1999) ("Because ineffectiveness is a question which we must decide, admissions of deficient performance by attorneys are not decisive.") (internal quotation marks omitted). Notably, Avila-Santoyo failed to identify any ground to challenge the order of removal as fundamentally unfair, see United States v. Holland, 876 F.2d 1533, 1536 (11th Cir. 1989) (evaluating an order of deportation under United States v. Mendoza-Lopez, 481 U.S. 828, 107 S. Ct. 2148 (1987)), which supports the findings of the district court that granting his motion would waste judicial resources and prejudice the government. Avila-Santoyo was not entitled to withdraw his plea.

We notice a clerical error in two orders involving Avila-Santoyo's guilty plea that require correction. The written report and recommendation of the magistrate judge and the order of the district court adopting the recommendation

state mistakenly that Avila-Santoyo pleaded guilty only to reentering the United States after being removed.  These orders conflict with the announcement of the magistrate judge at the change of plea hearing and the oral pronouncement of the district court at sentencing about accepting the guilty pleas and adjudicating Avila-Santoyo guilty of reentering after removal and entering the United States illegally.  Additionally, these orders conflict with the final judgment adjudicating Avila-Santoyo guilty of both crimes.  More importantly, the orders conflict with the transcript of Avila-Santoyo's change of plea hearing which establishes that he pleaded guilty to and confessed to facts establishing his guilt for both crimes.  Neither the attorneys nor the district court noticed the error and proceeded as though Avila-Santoyo pleaded guilty to both crimes, which confirms our conclusion that the error "really [does] not make any difference," United States v. Diaz, 190 F.3d 1247, 1253 (11th Cir. 1999), and constitutes the kind of clerical error that the district court can correct under Federal Rule of Criminal Procedure 36.  That rule permits the district court "at any time [to] correct a clerical error in a judgment, order, or other part of the record, or correct any error in the record arising from oversight or omission."  Fed. R. Crim. P. 36.  To ensure that the record reflects correctly Avila-Santoyo's pleas of guilty and convictions, we remand for the limited purpose of correcting the errors in the written report and

10

recommendation of the magistrate judge and the order of the district court adopting the recommendation.

## IV. CONCLUSION

Although we **AFFIRM** Avila-Santoyo's convictions for reentering following his removal from the United States and entering the country illegally, we **REMAND** to the district court with instructions to correct the clerical errors in two orders in the record.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**