[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-14301

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

YOLANDA BROWN THOMAS,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:20-cr-00032-CDL-4

————————————————

2                    Opinion of the Court                    22-14301

_____

No. 22-14339

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SANDRA ANDERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:20-cr-00032-CDL-2

_____

_____

No. 23-10006

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

*versus*

KRISTINA PARKER,

                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:20-cr-00032-CDL-5

_____

Before NEWSOM, ABUDU, and MARCUS, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Yolanda Thomas, Sandra Anderson, and Kristina Parker (collectively "the defendants") appeal their convictions and total sentences for conspiring to commit wire fraud, in violation of 18 U.S.C. § 1349; wire fraud, in violation of 18 U.S.C. § 1343; and financial aid fraud, in violation of 20 U.S.C. § 1097. According to the superseding indictment, the convictions arose out of a scheme the defendants devised while working at a Christian-based school in the southeastern United States, called Apex School of Theology, which received federal student financial

aid funds from the U.S. Department of Education ("DOE"). Apex's main campus was based in North Carolina ("Apex Main"), and it had satellite learning centers, including one in Columbus, Georgia ("Apex Columbus"), where the defendants were employed. From 2010 to 2018, the defendants conspired to enroll individuals at Apex Columbus who had no intention of enrolling, submit fraudulent financial aid applications on their behalf, and keep a portion of the disbursed aid for themselves. At a change-of-plea hearing, the defendants pled guilty to all counts in the superseding indictment.

At sentencing, the government estimated that there were 241 fraudulent students enrolled at Apex Columbus who received DOE financial aid, resulting in a loss amount of $12,085,001 in disbursed financial aid. According to the defendants' presentence investigation reports ("PSIs"), Anderson was the director at Apex Columbus and was considered to be the leader of the conspiracy; Thomas was the assistant director and an instructor at Apex Columbus, and was the second-in-command of the conspiracy; and Parker was an administrative assistant who worked the school's front desk and generally assisted the conspirators by completing the financial aid applications and keeping them informed. The court sentenced Anderson to 108 months' imprisonment and imposed a 3-year term of supervised release; the court sentenced Thomas to 63 months' imprisonment and imposed a 3-year term of supervised release; and the court sentenced Parker to 48 months' imprisonment and imposed a 3-year term of supervised release. Because a small portion of the $12,085,001 loss amount had been either paid off, discharged for disability, or consolidated, the district

court set each of the defendants' restitution amount at $11,821,022, to be paid jointly and severally with the other co-defendants.

On appeal, Anderson first argues that the district court abused its discretion by limiting the scope of the evidentiary hearing on the defendants' motion to dismiss the superseding indictment. The government responds that we need not consider the merits of Anderson's argument because the defendants each waived any non-jurisdictional defects that occurred before their pleas by entering knowing and voluntary guilty pleas. The defendants also claim on appeal that the district court clearly erred in calculating the amount of loss attributable to them for sentencing purposes. After thorough review, we affirm.

## I.

"We generally review a district court's evidentiary rulings for abuse of discretion." *United States v. Sarras*, 575 F.3d 1191, 1210 n.24 (11th Cir. 2009). "Whether the exclusion of evidence violated a constitutional guarantee is a legal question reviewed *de novo*." *Id.* Additionally, "[w]hether a defendant waived the right to appeal a district court's decision on a pretrial motion by entering a guilty plea is a question of law [we] review[] *de novo*." *United States v. Sanfilippo*, 91 F.4th 1380, 1383 (11th Cir. 2024). We review the district court's loss determination for clear error. *United States v. Cobb*, 842 F.3d 1213, 1218 (11th Cir. 2016). "Although review for clear error is deferential, a finding of fact must be supported by substantial evidence." *Id.* (quotation omitted).

An issue not raised in an opening brief on appeal generally is deemed abandoned and we will address it only in extraordinary circumstances. *United States v. Campbell*, 26 F.4th 860, 872–73 (11th Cir.) (*en banc*) (criminal appeal), *cert. denied*, 143 S. Ct. 95 (2022). A party fails to adequately brief a claim when he does not plainly and prominently raise it, by, for example, devoting a discrete section of his argument to that claim. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014). Abandonment can also occur when the passing references to a claim or issue are made in the "statement of the case" or "summary of the argument" sections, are mere background to the appellant's main arguments, or are buried within those arguments. *Id.* at 681–82.

## II.

First, we agree with the government that the defendants waived any non-jurisdictional defects that occurred before their pleas when each defendant entered a knowing and voluntary guilty plea. As we've long held, "a guilty plea must be made knowingly and voluntarily to be effective." *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). A guilty plea is made knowingly and voluntarily when (1) the guilty plea is free from coercion, (2) the defendant understands the nature of the charges, and (3) the defendant knows and understands the consequences of her guilty plea. *United States v. Siegel*, 102 F.3d 477, 481 (11th Cir. 1996).

Importantly, a "defendant's unconditional plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's

court proceedings." *Sanfilippo*, 91 F.4th at 1383 (alteration accepted). So, in *United States v. Fairchild*, a defendant who had pled guilty sought to raise these claims on appeal: "(1) the indictment was duplicitous and vague; (2) the actions of the Assistant United States Attorney constituted prosecutorial vindictiveness; and (3) there was an insufficient factual basis to support the indictment." 803 F.2d 1121, 1124 (11th Cir. 1986). We held that because all three claims were non-jurisdictional, they were "waived by [the defendant's] knowing and voluntary guilty plea." *Id.*

If a defendant who pleads guilty wishes to "preserve appellate review of the district court's denial of [her] motion to dismiss the indictment," she must enter a conditional plea in accordance with Fed. R. Crim. P. 11(a)(2). *Sanfilippo*, 91 F.4th at 1383. The plea must be in writing and consented to by the district court and the government. *Id.* There is "a strong presumption" that the defendant's statements during a plea colloquy are true. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987).

Here, Thomas seeks to challenge the district court's denial of her motion to dismiss the superseding indictment -- which raised, among other things, a selective prosecution claim -- without holding a full evidentiary hearing. However, the defendants waived any non-jurisdictional defects that occurred before their pleas, including the district court's denial of the motion to dismiss, because, as the record reflects, they each entered a knowing and voluntary guilty plea that was unconditional. *See Bushert*, 997 F.2d at 1350; *Siegel*, 102 F.3d at 477; *Gonzalez-Mercado*, 808 F.2d at 800

n.8; *Sanfilippo*, 91 F.4th at 1383.  Notably, the defendants do not claim that their guilty pleas were conditional or that they were not knowing and voluntary.  Thus, we need not consider whether the district court abused its discretion by limiting the scope of the evidentiary hearing on the defendants' motion to dismiss the superseding indictment.  *See Sanfilippo*, 91 F.4th at 1383; *Fairchild*, 803 F.2d at 1124.

### III.

We also find no merit to the defendants' argument that the district court clearly erred in its calculations of the amount of loss attributable to them at sentencing.  Under the guidelines, a defendant is subject to a 20-point specific offense enhancement if the loss attributable to her is more than $9,500,000, but not more than $25,000,000.  U.S.S.G. § 2B1.1(b)(1)(K).  As we've said, "[l]oss is the greater of actual or intended loss."  *Cobb*, 842 F.3d at 1218 (quoting U.S.S.G. § 2B1.1(b)(1) comment. (n.3(A))).  "Actual loss" is the "reasonably foreseeable pecuniary harm that resulted from the offense," and "intended loss" is the "pecuniary harm that was intended to result from the offense."  *Id.* (quoting U.S.S.G. § 2B1.1(b)(1) comment. (n.3(A)(i)-(ii))).

The district court is only required to make a reasonable estimate of the loss, and we defer to the court's determination.  *Cobb*, 842 F.3d at 1218 (citing U.S.S.G. § 2B1.1(b)(1) comment. (n.3(C))).  But although the district court's loss calculation may be a reasonable estimate, it may not be based on speculation.  *Id.* at 1219.  "The court shall use the gain that resulted from the offense as an

alternative measure of loss only if there is a loss but it reasonably cannot be determined." U.S.S.G. § 2B1.1(b)(1) comment. (n.3(B)).

The government "must establish the facts by a preponderance of the evidence and support the loss calculation with reliable and specific evidence." *Cobb*, 842 F.3d at 1219. "To make the loss determination, the district court is permitted to use evidence from trial, undisputed [PSI] facts, and evidence from the sentencing hearing." *Id*. "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).

In *Cobb*, we held that the district court did not clearly err in its calculations of the actual loss amount based on the Internal Revenue Service ("IRS") agent's testimony that the defendant was accountable for 805 fraudulently-filed tax returns. *See Cobb*, 842 F.3d at 1219–20. We also held that the actual loss was the "amount paid out by the IRS," and that the district court made a reasonable estimate of loss based on the spreadsheet prepared by the IRS agent and the agent's testimony. *See id*. at 1217–21.

Here, the district court did not clearly err in calculating the amount of loss attributable to the defendants. For starters, the record reflects that the district court's loss amount calculations were based on an estimate of *actual loss* -- the amount of financial aid that the DOE disbursed to Apex Columbus students – rather than on an

estimate of intended loss.  Indeed, the district court expressly said that it found that the government met its burden in proving the "actual loss" amount – i.e., "the reasonably foreseeably pecuniary harm that resulted from the events."

As a result, to the extent Anderson argues that the district court improperly deferred to the commentary of the guidelines to expand the definition of "loss" to include intended loss, we disagree.  She bases on her argument on *United States v. Dupree,* in which we recently held that courts can defer to the commentary in the guidelines only when the regulation is "genuinely ambiguous" and after "exhaust[ing] all the 'traditional tools' of construction." 57 F.4th 1269, 1275–78 (11th Cir. 2023) (quoting *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019)).  Here, however, the district court based the amount of loss attributable to the defendants on actual loss, not on the intended loss as described in the guidelines commentary, and Anderson's argument is without merit.

Moreover, the district court properly determined that the government met its burden and used reliable and specific evidence in establishing the loss amount.  At sentencing, the government admitted into evidence spreadsheets prepared by IRS agent Josh Etheredge, who created the documents by using financial aid amounts directly obtained from the DOE, plus other relevant information from the investigation of this case.  As for the non-DOE information, Agent Etheredge -- through his testimony and through the government's proffer -- explained that it came from search warrants that were executed at Apex Main and Apex

Columbus, interviews with students who enrolled at Apex Columbus, the defendants' e-mails, and documents showing that certain students did not submit their own homework. Etheredge also confirmed that the government was accurate in its explanations of the spreadsheets and that he would have testified consistently with the government's proffer. Etheredge summarized that through his spreadsheets, he identified 241 students who were fraudulently enrolled at Apex Columbus and calculated that the total amount of financial aid that those students received was $12,085,001. Based on this evidence, the district court found that the government proved by a preponderance of the evidence "with precise detailed evidence" that the "actual loss" amount was $12,085,001 for guideline calculations purposes.

On this record, the district court made a reasonable estimate of loss based on the evidence presented at sentencing and Etheredge's testimony, and it did not need to use an alternative measure of loss. *See Cobb*, 842 F.3d at 1218–19; U.S.S.G. § 2B1.1(b)(1) comment. (n.3(B)); U.S.S.G. § 6A1.3(a). Accordingly, the district court did not clearly err in calculating the loss amount attributable to the defendants, and we affirm.

**AFFIRMED.**